Edward M. O’Gorman, J.
This proceeding, brought on by order to show cause, is based upon a petition which seeks to set aside the award of a contract by the respondent City of Mt. Vernon to the respondents Vincent Sposato and Jerry Certaine, doing business as Computer Designed Municipal Services, to computerize the administrative departments of said city. The order recites that the proceeding is brought pursuant to CPLR article 78. The respondents have been temporarily restrained from proceeding further in connection with the aforesaid contract.
*1015 Petitioner makes this application in his capacity as a taxpayer of the City of Mt. Vernon. His petition also indicates that the aspects of the award of the aforesaid contract which are illegal have denied him, as a potential bidder, the opportunity of submitting an intelligent bid on the same contract.
As a matter of technical procedure, it has been held that while an unsuccessful low bidder may maintain an article 78 proceeding to review the legality of the bidding process, this right is not granted one who did not bid (see Matter of Dictaphone Corp. v. O’Leary, 287 N. Y. 491).
However, the court is required, wherever possible, to disregard the form of the proceeding and to deal with the merits of the application if an adequate basis for an alternative form of proceeding is set forth in the moving papers (see CPLR 103, subd. [c]; see, also, Matter of Mohican Cable T.V. Corp. v. Cronin, 34 A D 2d 692; Matter of Barile v. City Comptroller of City of Utica, 56 Misc 2d 190).
In this ease, it seems clear that the petitioner could seek a review of the bidding process, and nullification of the contract if found to be illegal, in a taxpayer’s action (General Municipal Law, § 51), and the court will consider the petition on that basis.
On behalf of the respondent city, there has been furnished the court a voluminous record which traces the historical developments in this case from the original contract which retained a consultant to study the feasibility of a computer processing system for the City of Mt. Vernon, to the last advertisement for bids published on May 24, 1973. The petitioner contends that the competitive bidding process was violated because the "specifications of the computerized system for the city were specially tailored for the benefit of the respondents Sposato and Certaine; that the respondents Sposato and Certaine had special information concerning the specifications which was not available to other bidders, and that as a consequence, the time available for examining the specifications published and bidding on the system was inadequate and unfair to all potential bidders except the respondents Sposato and Certaine.
The respondent City of Mt. Vernon denies any illegality; denies that the contract is such as to require competitive bidding because of the special nature of the services to be rendered; .denies that there was anything unusual about the bidding which would place a greater burden on any other bidder than the respondents Sposato and Certaine, and denies that the time allowed for competitive bidding was in violation of the provisions of the General Municipal Law.
*1016 The answer of the respondents Sposato and Certaine contains denials substantially similar to those of the respondent City of Mt. Vernon.
By their briefs, the parties raise a multiplicity of issues. They differ on whether the contract which is the subject of the bid was of such a'nature as to require competitive bidding pursuant to the provisions of section 103 of the General Municipal Law, in view of the skills and special qualifications required for its performance. An issue is also raised in this connection as to whether the portion of materiel supplied in connection with the services to be rendered required that the contract be subject to competitive bidding. An issue is raised as to the applicability to the particular bid of the respondents Sposato and Certaine of section 19 of the Charter of the City of Mt. Vernon (L. 1922, ch. 490, as amd.). Petitioner contends that the contract is rendered illegal because Vincent Sposato received compensation from the City of Mt. Vernon for the preparation of his preliminary studies, and is barred from having an interest in a subsequent contract with the city dealing with the same subject matter.
The city, on the other hand, contends that the contract is valid, on the ground that the initial contract of Vincent Sposato had been completed and his payment had been received several months before his making any subsequent bid on another and different contract.
The parties also differ sharply on whether a period of 10 days is a reasonable period to allow for the formulation of the bids in this case.
Brushing aside for a moment the foregoing technical clouds which obscure a clear view of the events which are questioned in this proceeding, the following uncontroverted facts loom clear, and suggest but one remedy.
It is not denied by anyone that the City of Mt. Vernon on July 11, 1972 employed Vincent Sposato as a consultant knowledgeable in the computer field, to review the'workings of the various departments of the City of Mt. Vernon for the purpose of recommending to the city an appropriate system, equipment, materiel and personnel training program to computerize the administrative activities of the City of Mt. Vernon. After approximately four months, the, consultant Sposato’s recommendations for the program were prepared, as were extensive specifications for subsequent contracts to be let to implement the system recommended by his study. These recommended specifications, having been adopted by the city as constituting an acceptable system, were published for the purpose of obtaining *1017 bids by various contractors to bring the system into actuality.
The magnitude of the undertaking to computerize the administrative departments of the City of Mt. Vernon is also clear. It should be borne in mind that what was originally contemplated was a study and analysis of the work programs of the following departments: City Court, Fire Department, Police Department, City Clerk’s office, Tax Assessor’s office, Finance Department, City Planning Department, Building Department, Library, Water Department, Department of Public Works, and Civil Service Commission.
The study and analysis made by Sposato took three months, and the recommendations in connection therewith consist of approximately 37 pages of single-spaced type. It was this elaborate program, involving as it did the use of various types of computer equipment, which had been selected and specially tailored by Sposato for the work at hand, which the public bidders had to study. This study included the performance of systems analyses, programming and documentation, methods of conversion from manual to computer operation, necessary personnel training, and plans for the over-all responsibility for the city’s computer system for a period of two years. Study had also to be made of the recommended equipment and its capacity to do the job. Upon the completion of this study, bids were to he submitted. All of the foregoing analysis and study was to be completed within a period of 10 days. This period was further reduced to 5 when there is taken into account the bidding requirement that any questions on the matter of interpretation of the specifications had to be submitted within the first 5 days.
It is uncontroverted that the feasibility studies which were made by Sposato, and which contained a vast amount of necessary information concerning the work to be performed by the successful bidder, were never made available to those who were called on to bid, with one exception. This exception was the company organized by the respondents Vincent Sposato and Jerry Certaine, and which had been organized for the purpose of winning the bid and executing the contract. Under the circumstances outlined, it is not surprising that the bid of Sposato and Certaine in the amount of $167,450 was the sole bid and won the contract.
In view of the authorities cited in the opposing briefs,-it cannot be said, as a general proposition, that a contract such as the one with which we are dealing is of such nature that it is either clearly exempt from or clearly subject to the requirements of competitive bidding. In the rapid advances made in the use *1018 of1 computers, what may have been unique knowledge and experience at one point may no longer be thus considered. So, too, a contract requiring a combination of services and supplies may often make it difficult to determine whether competitive bidding should be required.
In this particular case, where the specifications for the contract were drawn by one of the bidders, where they are tailor-made for a particular purpose by one of the bidders, and where all of the detailed information available to one of the bidders is not made available to other bidders, it would seem clear that the only means of protecting the public interest and the fairness of the contract would be the adoption of the procedures established hy section 103 of the General Municipal Law, and the application to those procedures of the standards of reasonableness and fairness evolved by the courts. It is therefore the court’s opinion that those standards should be met in this case.
This would also seem clearly to have been the opinion of the responsible officers of the City of1 Mt. Vernon, who required that the contract be let to the lowest bidder.
The court is not of the opinion that the award of the contract in question to the respondents Sposato and Certaine is a violation of section 19 of the Charter of the City of Mt. Vernon, in view of the fact that at the time of the bidding, the prior contract of the respondent Sposato to make the feasibility study had been completed, and the bar of section 19 is to deprive a person receiving compensation from being interested in any contract to which the city is a part.
However, we must not lose sight of the danger from which section 19 was designed to protect the city. Any situation in which a consultant is called upon to make a study and prepare detailed specifications for a contract subsequently to be bid upon by others is fraught with the danger that the specifications thus drawn may confer a special advantage upon a particular bidder, to the detriment of the city. The moving papers are devoid of any evidence that any of the parties to this litigation have acted in bad faith. Indeed, it would be very difficult to ascertain in any given case whether certain specifications were unduly restrictive, so as to unnecessarily narrow the field of prospective bidders.
It is in the best interests of the City of Mr. Vernon that any specifications drawn by a consultant hired for that purpose be broad enough, if possible, so that several bidders may have an opportunity to bid thereon, in the interest of procuring the serv *1019 ice at the lowest cost to the city. A minimum requirement in the public interest should be that the detailed .specifications thus drawn, and the background factual information necessary to make an intelligent bid, should be placed in the hands of all bidders, and not just one, and that adequate time be allowed for the formulation of the bids (see 10 McQuillin, Municipal Corporations [3d ed.], § 29.60).
In this case, it is the decision of the court that the special circumstance that the specifications were drawn by one of the bidders, taken in conjunction with the brief period allotted for the bidding and the fact that the draftsman of the specifications became the sole bidder, to whom the contract was awarded, renders the contract invalid as against public policy, and requires, in the public interest, that the contract once again be advertised for bids; that the information in the feasibility study be made available to potential bidders, and that a reasonable time be allotted for the submission of bids.
Under such circumstances, in my opinion, it would not be improper for the respondents Sposato and Certaine to participate in the bidding and to accept the contract if awarded.